## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LUCY B. IKONA, individually and in her capacity as Personal Representative of the estate of KENNETH MINDAKO ETUKA, et al., <br><br>       Plaintiffs, <br><br>       v. <br><br> AHC OF OVERLAND PARK, LLC, <br><br>       Defendant. | Case No. 22-2016-KHV-RES |

## <u>MEMORANDUM AND ORDER</u>

Before the Court is Defendant AHC of Overland Park, LLC d/b/a Advanced Healthcare of Overland Park's ("AHC") Motion to Strike the Revised Rebuttal Report of John D. Day, M.D. ECF No. 73. On February 21, 2023, Plaintiffs Lucy B. Ikona, individually and in her capacity as personal representative of the estate of decedent Kenneth Mindako Etuka, and Roggie B. Etuka (collectively, "Plaintiffs") filed their opposition. ECF No. 79. Pursuant to the Court's previous order, no replies were allowed. ECF No. 71 at 2. For the reasons explained below, the Motion is granted in part and denied in part.

## I.     BACKGROUND

### A.     Factual Allegations

According to the complaint, on October 9, 2019, Kenneth Etuka was admitted to Defendant's facility in Overland Park, Kansas, for physical and occupational therapy after undergoing a below-the-knee amputation. ECF No. 1 at 4, ¶ 15. On October 17, 2019, it was reported that Mr. Etuka slid out of bed. *Id.* at 4, ¶ 16. Plaintiffs allege that later that day, Mr. Etuka was transferred to St. Luke's South Hospital in Overland Park, Kansas, where he was

diagnosed with a subdural hematoma.  *Id.* at 5, ¶ 20.  Mr. Etuka was subsequently transferred to St. Luke's Hospital in Kansas City, Missouri.  *Id.* at 5, ¶ 21.  At St. Luke's in Kansas City, a CT of Mr. Etuka's brain was performed which revealed, among other things, "an acute traumatic subdural hematoma . . . ."  *Id.* at 5, ¶ 22.  On October 19, 2019, Mr. Etuka died.  *Id.* at 5, ¶ 21.  The official certificate of death states that Mr. Etuka died of "complications of a subdural hemorrhage." *Id.* at 5, ¶ 23.

Defendant does not dispute that "Mr. Etuka experienced a subdural hematoma."  ECF No. 73 at 1.  The central issue in this case, according to Defendant, is the "cause of the subdural hematoma and surrounding circumstances."  *Id.*  Plaintiffs do not disagree but add that the other key issues in this case are whether Mr. Etuka slid or fell out of bed, whether he "sustained an injury" from what Plaintiffs characterize as a fall, and whether Defendant's delay in seeking medical treatment contributed to Mr. Etuka's death.  ECF No. 79 at 2-3.

**B.      Scheduling Order and Disclosure of Expert Witnesses**

Per the scheduling order, as amended, the parties were ordered to make expert witness disclosures as follows:[1]

---

[1]      The deadlines related to the parties' expert witness disclosures have been amended several times during the discovery period.  *See* ECF Nos. 30 (Memorandum and Order granting in part and denying in part Motion to Amend Scheduling Order Out of Time), 59 (Order granting Unopposed Motion for Extension of Time to Produce Defendant's Experts for Depositions), 61 (Order granting Unopposed Motion for Extension of Time for Plaintiffs to Disclose Rebuttal Experts), and 64 (Order granting Joint Motion to Extend Deadline for Discovery).

| Event | Deadlines |
|---|---|
| Experts disclosed by plaintiffs | **September 23, 2022** |
| Plaintiffs' experts produced for deposition | **October 14, 2022** |
| Experts disclosed by defendant | **November 30, 2022** |
| Rebuttal experts disclosed | **January 17, 2023** |
| Defendant's experts produced for deposition | **January 23, 2023** |
| All fact and expert discovery completed | **February 28, 2023** |

On September 23, 2023, Plaintiffs served their Rule 26(a)(2)(B) initial expert disclosures, naming Dr. Day and Dr. Reza Farid as retained experts.  ECF No. 31.  Highly summarized, Dr. Day opined in his initial expert report that: (1) Mr. Etuka demonstrated signs and symptoms of a serious neurological problem in the morning on October 17, 2019, and the delay in recognizing these symptoms constitutes a breach of the standard of care; (2) Defendant's failure to take precautionary measure until after Mr. Etuka fell out of bed on October 17, 2019, even though AHC recognized upon admission that Mr. Etuka was at a high risk of falling, constitutes a breach of the standard of care; and (3) Mr. Etuka more likely than not would have survived with surgical treatment of his subdural hematoma if his condition were appropriately and timely diagnosed.  ECF No. 67 at 32-34.[2]

On November 30, 2022, Defendant served its Rule 26(a)(2)(B) initial expert disclosures, naming Kendall M. Jones, M.D., F.A.C.R., David. W. Peters, M.D., Omar Zalatimo, M.D., MPH,

---

[2]    Because Plaintiffs have withdrawn Dr. Farid's rebuttal expert report, the Court will not summarize Dr. Farid's initial expert report.

MHA, FAANS, and Judy Bagby, R.N.  ECF Nos. 44-47.  On January 17, 2023, Plaintiffs timely served their rebuttal expert disclosures, again naming Dr. Day and Dr. Farid.  ECF No. 62.

### C.  Defendant's First Motion to Strike Plaintiffs' Rebuttal Experts

On February 3, 2023, Defendant filed an original motion to strike Plaintiffs' rebuttal expert reports, raising, in large part, the same arguments it raises in this Motion.  ECF No. 67.  On February 9, 2023, the Court held a discovery conference on the motion.  ECF No. 68.  As discussed during the conference, the Court denied Defendant's motion without prejudice for failure to comply with D. Kan. Rule 37.1(a), which required Defendant to request a discovery conference with the Court before filing a discovery-related motion, and D. Kan. Rule 37.2, which required Defendant to exhaust its meet-and-confer obligations prior to seeking relief from the Court on a disputed discovery issue.  ECF No. 71 at 1.

During the conference, however, the Court expressed serious concerns with whether Plaintiffs' rebuttal expert reports solely contradicted or rebutted Defendant's expert reports.  The Court therefore ordered the parties to meet and confer on or before February 13, 2023, to discuss Plaintiffs' rebuttal expert reports.  *Id.*  On or before noon on February 15, 2023, Plaintiffs were ordered to either (1) confirm via email to the Court and Defendant that they were withdrawing their rebuttal expert reports, or (2) serve amended rebuttal expert reports consistent with the discussions during the discovery conference and consistent with the parties' meet and confer discussions.  *Id.* at 1-2.  On or before February 17, 2023, Defendant was ordered to file any renewed motion to strike Plaintiffs' amended rebuttal expert reports.  *Id.* at 2.  Plaintiffs' response to any renewed motion was due on or before February 21, 2023.  *Id.*

On February 9, 10, and 13, 2023, the parties met and conferred by phone and Zoom.  ECF No. 73 at 2.  As a result of the parties' meet-and-confer efforts, on February 15, 2023, Plaintiffs

served an amended rebuttal expert report for Dr. Day and withdrew the rebuttal expert report for Dr. Farid.  ECF No. 74.  Plaintiffs withdrew six of the paragraphs in Dr. Day's original rebuttal report, leaving a total of six paragraphs in his amended rebuttal report.  ECF No. 73-1.

On February 17, 2023, AHC filed this Motion.  ECF No. 73.  Defendant primarily argues that Paragraphs 1, 2 and 4 of Dr. Day's amended rebuttal report "are more properly part of plaintiffs' case-in-chief or relate to issues plaintiffs should have known defendant was likely to contest" and as such, should have been disclosed in his initial expert report.  *Id.* at 5.  Regarding paragraphs 3, 5, and 6, Defendant argues that these paragraphs "largely restate[] Dr. Day's opinions already offered" rather than contradict or rebut Defendant's experts reports and are therefore not proper rebuttal.  *Id.* at 7.

On February 21, 2023, Plaintiffs filed their response.  ECF No. 79.  Plaintiffs argue that Dr. Day's amended rebuttal report is proper because (1) "the subjects of Dr. Day's rebuttal report were not essential to Plaintiff[s'] case-in-chief," (2) "the subjects of Dr. Day's rebuttal report are legitimately proffered to 'disprove or contradict' defense theories that are raised in two of Defendant's expert reports," and (3) "Plaintiffs' expert could not have reasonably anticipated the opinions of Defendant experts nor should he have."  ECF No. 79 at 4.

The Motion is now before the Court.

## II.     LEGAL STANDARD

Rebuttal expert testimony is limited to "evidence [ ] intended solely to contradict or rebut evidence on the same subject matter identified by another party" in its expert disclosures.  Fed. R. Civ. P. 26(a)(2)(D)(ii).  "[T]he decision to admit or exclude rebuttal testimony remains within the trial court's sound discretion."  *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005).  Courts exclude the use of rebuttal expert testimony to "introduce evidence more properly a part of a

party's case-in-chief, especially if the alleged rebuttal expert is used to introduce new legal theories." *Foster v. USIC Locating Servs., LLC*, No. 16-2174-CM, 2018 WL 4003354, at *2 (D. Kan. Aug. 17, 2018) (internal quotations omitted).  But a court may "admit rebuttal evidence on a topic when 'a party opens the door to [that] topic.'" *Tuschhoff v. USIC Locating Servs., LLC*, No. 19-CV-1149-EFM-TJJ, 2021 WL 3489693, at *2 (D. Kan. Aug. 9, 2021) (quoting *Tanberg*, 401 F.3d at 1166).

"[W]here the evidence rebuts new evidence or theories proffered in the defendant's case-in-chief, that the evidence may have been offered in the plaintiff's case-in-chief does not preclude its admission in rebuttal."  *Bell v. AT&T*, 946 F.2d 1507, 1512 (10th Cir. 1991).  The Court, however, is within its discretion to disallow rebuttal testimony "when a plaintiff seeks to rebut defense theories which [the] [p]laintiff knew about or reasonably could have anticipated." *Tuschhoff*, 2021 WL 3489693, at *2 (citing *Koch v. Koch Industries, Inc.,* 203 F.3d 1202, 1224 (10th Cir. 2000)).

Rule 26(a)(2)(D) requires the parties to disclose expert testimony "at the times and in the sequence that the court orders."  If the Court determines information should have been disclosed in Plaintiff's case-in-chief, then Rule 37 applies.  Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

### A.    Plaintiffs' amended expert rebuttal report includes proper and improper rebuttal testimony.

For the reasons explained below, the Court finds that Paragraphs 1, 4, and 6 are proper rebuttal testimony because they do not offer new legal theories, they contradict or rebut Defendant's expert opinions, and Plaintiffs did not know and could not have reasonably anticipated

Defendant's theories.  Paragraphs 2, 3, and 5, however, constitute improper rebuttal testimony because they do not contradict or rebut Defendant's expert opinions.

### 1.    Paragraph 1

Paragraph 1 of Dr. Day's amended rebuttal report discusses Mr. Etuka's Glasgow Coma Scale ("GCS") score.  ECF No. 73-1 at 1.  In his original report, while Dr. Day did not include a GCS score for Mr. Etuka when he was admitted to AHC on October 9, 2019, he does discuss Mr. Etuka's GCS score on October 17, 2019.  ECF No. 67 at 33-34.  In contrast, Dr. Zalatimo's report states that Mr. Etuka's GCS score upon admission to AHC was 13.  ECF No. 73-1 at 1.  In his rebuttal expert report, Dr. Day contradicts this specific conclusion of 13 at admission by stating, among other things, that "[t]here is nothing in the record to substantiate a GCS of 13" and criticizing a specific factor utilized by Dr. Zalatimo in arriving at his conclusion of 13.  *Id.*

The Court finds that this is proper rebuttal testimony.  Defendant argues that because Dr. Day addressed Mr. Etuka's GCS score in his initial report and in his deposition, "the GCS issue was on the table and is not proper rebuttal testimony."  ECF No. 73 at 5.  But just because Dr. Day discussed Mr. Etuka's GCS score in his initial expert witness report does not mean that he should have anticipated that Dr. Zalatimo's opinion would be that Mr. Etuka's GCS score was 13 because he found "no notes that would support anything other than a GCS of 15 on admission."  ECF No. 73-1 at 1.  Dr. Day's analysis in this paragraph is a specific response to a specific conclusion asserted by Defendant's expert.  As such, the Court finds that Paragraph 1 is proper rebuttal testimony.

        **2.**       **Paragraph 2**

Regarding Dr. Day's Paragraph 2, Dr. Day states that Dr. Zalatimo "claimed in his report that Mr. Etuka remained 'at his baseline' in terms of his mental status on October 17, 2019." ECF No. 73-1 at 1. Dr. Day further states that "[t]he evidence in the medical record indicates otherwise." *Id.* at 1-2. Dr. Day then cites to notes by nursing, occupational therapy, and physical therapy indicating that on October 17, 2019, Mr. Etuka was disoriented, confused, and struggled with physical activities throughout the day. *Id.* at 2. This information, however, is more properly part of Plaintiffs' case-in-chief.

Plaintiffs have the burden of proving Defendant was negligent and breached the standard of care. "Theories as to why [a] defendant was negligent are properly in plaintiff's case-in-chief." *Foster v. USIC Locating Servs., LLC*, No. 16-2174-CM, 2018 WL 4292677, at *2 (D. Kan. Sept. 6, 2018). Dr. Day's opinion in his initial expert report is that Defendant breached the standard of care because Mr. Etuka demonstrated symptoms of a serious neurological problem in the morning on October 17, 2019, which were not recognized by AHC until the evening and which delayed his diagnosis of a subdural hematoma. ECF No. 67 at 32. In his initial report, Dr. Day cites notes from AHC staff that indicate Mr. Etuka's mental and physical status were allegedly deteriorating throughout the day. ECF No. 67 at 30-32.

Rather than contradict Dr. Zalatimo's claim that Mr. Etuka remained "at his baseline," Paragraph 2 attempts to bolster Dr. Day's initial opinion that Defendant's alleged delay in recognizing that Mr. Etuka was suffering from a serious neurological problem constitutes a breach of the standard of care. Dr. Day even relies on the same notes he cited in his initial expert report. *See, e.g.,* ECF Nos. 67 at 31; 73-1 at 2 (Dr. Day cites same note from occupational therapy that Mr. Etuka said his left hand was "all floppy."). Such evidence was included in Dr. Day's initial

report because it directly supports Plaintiffs' theory on how Defendant breached the standard of care.

Moreover, Plaintiffs' theory is that "Defendant failed to monitor and seek timely medical treatment for what Plaintiffs contend were marked changes in Mr. Etuka's condition" and "waited until 6:37 p.m. that night to cause treatment . . . ." ECF No. 79 at 3. Plaintiffs could have reasonably anticipated that Defendant's theory would be that there was no delay in seeking medical treatment because there was no change in his condition. The Court therefore finds that Paragraph 2 constitutes improper rebuttal.

### 3.    Paragraph 3

In Paragraph 3 of Dr. Day's amended rebuttal report, he discusses Dr. Zalatimo's review of the CT scan on Mr. Etuka's brain. ECF No. 73-1 at 2. Dr. Day states that he "agree[s]" with Dr. Zalatimo's assessment of the CT scan and "ha[s] not stated otherwise." *Id.* By agreeing with Dr. Zalatimo's conclusion, he is not contradicting or rebutting evidence on the same subject matter identified by Dr. Zalatimo. *See RMD, LLC v. Nitto Americas, Inc.*, No. 09-2056-JAR-DJW, 2012 WL 5398345, at *11 (D. Kan. Nov. 5, 2012) ("The purpose of a rebuttal opinion is just that—to rebut evidence offered by the adverse party."). This paragraph does not do that, and the Court therefore finds that Paragraph 3 of Dr. Day's amended rebuttal expert report is improper rebuttal.

### 4.    Paragraph 4

In Paragraph 4 of Dr. Day's amended rebuttal report, he references Dr. Jones' opinion about the percentages of blood shown on the CT scan of Mr. Etuka's brain between acute, subacute, and chronic components. ECF No. 73-1 at 2. Dr. Day disagrees with Dr. Jones' specific opinion because based on his thirty years of experience, he "cannot imagine" being able to accurately ascribe the apportioning of blood on the CT scan considering the bleed showed as mixed

densities on the gray scale.  *Id.*  Dr. Day also argues that Dr. Jones' apportionment ignores other facts that interfere with the ability to accurately determine the age of bleeding.  *Id.*

The Court finds that this is proper rebuttal testimony.  Defendant asserts that because Dr. Day possessed the CT scans at the time of his disclosure and opined on these scans in his initial report, this paragraph should be stricken.  ECF No. 73 at 6-7.  But that is not the standard to determine whether or not rebuttal testimony is proper.  Dr. Day's opinion is that Dr. Jones cannot accurately apportion the blood on the CT scan between acute, subacute, and chronic components. Similar to Paragraph 1, Dr. Day's opinion is a specific response to a specific conclusion asserted by Defendant's expert.  Such opinion is not offering a new legal theory, introducing new evidence or presenting a new argument.  Moreover, Plaintiffs could not have reasonably anticipated this specific conclusion, especially if based on his thirty years of experience in interpreting CT scans, Dr. Day "cannot imagine being able to perform such an apportionment with any accuracy."  ECF No. 73-1 at 2.  The Court therefore finds that Paragraph 4 is proper rebuttal testimony.

### 5.      Paragraph 5

In Paragraph 5 of Dr. Day's amended rebuttal report, he notes that Drs. Zalatimo and Jones "make reference" to Mr. Etuka's blood pressure of 191/100 on October 17, 2019, after he was reported unresponsive.  ECF No. 73-1 at 3.  Dr. Day states that "[t]here is no evidence in my opinion that the acute component of subdural hematoma was a result of acute hypertension."  *Id.* Rather, it is Dr. Day's "opinion this high blood pressure reading was more likely than not a physiologic response to increased intracranial pressure from the subdural hematoma."  *Id.*  In Plaintiffs' response, they argue that Paragraph 5 directly rebuts "Dr. Zalatimo and Dr. Jones hypostatizing that the subdural hematoma was a result of a 'spike' in Mr. Etuka's blood pressure." ECF No. 79 at 8.

The Court finds that this is improper rebuttal testimony. By stating that "there is no evidence in my opinion" linking a high blood pressure reading with the subdural hematoma, Dr. Day appears to use this paragraph in part to bolster his original opinion. While Defendant's experts may "make reference" to that specific blood pressure reading, Dr. Day does not specifically contradict any purported analysis performed by Defendant's experts regarding this blood pressure reading or any conclusions reached as part of this analysis. Instead, Dr. Day attempts to present a new theory, without any explanation or facts to support such theory, that Mr. Etuka's high blood pressure was more likely caused by increased intracranial pressure. "[A] rebuttal expert report is not the proper place for presenting new arguments." *RMD, LLC*, 2012 WL 5398345, at *11 (citation omitted). The Court therefore finds that Paragraph 5 is improper rebuttal testimony.

### 6.   Paragraph 6

In Paragraph 6, Dr. Day states that he disagrees with Dr. Zalatimo's "implication" that "if patients have a risk of complications from neurosurgical treatment of life-threatening injuries that it is common practice to withhold such interventions." ECF No. 73-1 at 3. Dr. Day states actions such as administering "reversal agents to counter the actions of anticoagulant drugs and to transfuse platelets" have not been "uncommon in [his] 30 years of experience as a neurosurgeon." *Id.*

Defendant argues that Paragraph 6 is merely a "reiteration of opinions" offered in Dr. Day's original report and are therefore not proper rebuttal. ECF No. 73 at 9. But similar to Paragraphs 1 and 4, Dr. Day's opinion about the issue of intervening measures is a specific response to Dr. Zalatimo's conclusion that it is common practice to withhold such interventions if a patient has a risk of complications from neurosurgical treatment. Dr. Day rebuts this conclusion based on his thirty years of experience. Dr. Day's opinion does not introduce any new theories or present a

new argument.  Moreover, because such intervention is not uncommon in Dr. Day's thirty years of experience, Plaintiffs could not have reasonably anticipated that Defendant would argue that withholding such intervention is common practice.  The Court therefore finds that Paragraph 6 is proper rebuttal testimony.

**B.      Plaintiffs' failure to include Paragraphs 2, 3 and 5 in Dr. Day's initial expert report is not substantially justified or harmless.**

Despite the Court's finding that Paragraphs 2, 3, and 5 constitute improper rebuttal testimony, the Court can, in its discretion, permit Plaintiffs to use such testimony at trial under Rule 37(c) if the Rule 26(a) violation is substantially justified or harmless.  "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  Although the district court is not required to "make explicit findings concerning the existence of a substantial justification or the harmlessness," the Tenth Circuit has held that the following factors should guide the Court's discretion: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.*

"In applying Rule 37(c)(1), the court must first determine whether substantial justification for failing to make the required disclosure exists." *Tuschhoff*, 2021 WL 3489693, at *2 (internal quotation marks omitted).  "If the party who failed to make the required disclosures does not demonstrate substantial justification, then the court must determine whether the failure to disclose was harmless." *Id.*  A failure to disclose is considered harmless "when there is no prejudice to the party entitled to the disclosure." *Id.* (internal citations omitted).  "The burden to demonstrate

substantial justification and the lack of harm is on the party who failed to make the required disclosure." *Id.*

The Court finds that Plaintiffs have not met their burden.  Plaintiffs provide no explanation for why their failure to include Paragraphs 2, 3 and 5 in Dr. Day's initial expert report is substantially justified.  Regarding Paragraphs 2 and 3, Plaintiffs' simply state that they should be allowed to rebut Defendant's experts on the subjects.  ECF No. 79 at 7.  But these statements do not explain why Plaintiffs did not include these paragraphs in Plaintiffs' case-in-chief.  Regarding Paragraph 5, Plaintiffs argue that they should not be expected to "raise and eliminate every possible cause of Mr. Etuka's condition particularly where there was no support in the record for such other cause." *Id.* at 9.  Plaintiffs, however, are expected to limit their rebuttal testimony to evidence that contradicts or rebuts Defendant's experts.  As explained above, Paragraph 5 offers a new theory rather than rebutting or contradicting Defendant's experts.

Defendant also would suffer prejudice by allowing Paragraphs 2, 3, and 5 at this stage in the case.  Plaintiffs attempt to argue that there is no surprise or prejudice to Defendant because Defendant argues that the paragraphs in Dr. Day's amended rebuttal report are either in his initial expert report or were subjects asked during Dr. Day's deposition.  ECF No. 79 at 9.  But as Plaintiffs admit, Dr. Day's answers "are not the same as what he has stated in the amended rebuttal report." *Id.*  Although trial is still several months away, fact and expert discovery in this case has closed.  Contrary to Plaintiffs' argument, Defendant does not have the opportunity to respond to Dr. Day's amended rebuttal report because the deadline to complete discovery is today.  Moreover, even if discovery were not closed, allowing Paragraphs 2, 3, and 5 would open new lines of discovery at this late stage.  Advancing new legal theories and arguments through a rebuttal expert "right before the discovery deadline, 'subverts the expert disclosure process.'" *Foster*, 2018 WL

4003354 at *3 (quoting *Stephenson v. Wyeth LLC*, No. 04-2312-CM, 2011 WL 4900039, at *3 (D. Kan. Oct. 14, 2011)).

This prejudice cannot be cured because as stated above, the Court already has amended the parties' expert disclosure deadlines several times in this case. The Court will not extend the discovery period on the discovery deadline and disrupt the pretrial conference, which occurred today, to allow testimony that should have been included in Plaintiffs' case-in-chief.

Finally, while the Court does not find that Plaintiffs have acted in bad faith or willfulness, Plaintiffs are responsible for the compressed expert discovery period because they missed their original deadline to disclose their experts. *See* ECF No. 30. This initial failure to comply with the Court's scheduling order, which has compressed all deadlines in this litigation, does not support additional changes to the scheduling order. The Court therefore finds that Plaintiffs' failure to include Paragraphs 2, 3, and 5 in their case-in-chief is not substantially justified or harmless.

### C. The Court will not exclude Dr. Day as a rebuttal witness but will limit his amended rebuttal report.

In conclusion, there are paragraphs of Dr. Day's amended rebuttal report that go beyond the scope of a proper rebuttal witness, and paragraphs that fairly can be deemed as contradicting and rebutting Defendant's experts. "In situations like this, the appropriate course is to limit the proposed rebuttal expert's testimony rather than striking it altogether." *RMD, LLC*, 2012 WL 5398345, at *12 (citing *Noffsinger v. The Valspar Corp.*, No. 09 C 916, 2011 WL 9795, at *7 (N.D. Ill. Jan. 3, 2011) (collecting cases)). Accordingly, the Motion is granted in part and denied in part. Dr. Day's testimony as a rebuttal expert witness is limited to Paragraphs 1, 4, and 6 of his amended rebuttal report.

III.     **CONCLUSION**

For the reasons explained above, Defendant's Motion to Strike the Revised Rebuttal Report of John D. Day, M.D., ECF No. 73, is **GRANTED IN PART** and **DENIED IN PART**.  The Court limits Dr. Day's amended rebuttal report to Paragraphs 1, 4 and 6.  On or before **March 2, 2023**, Plaintiffs are ordered to serve an amended rebuttal expert report for Dr. Day consistent with this Order.

**IT IS SO ORDERED.**

Dated: February 28, 2023, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
U.S. Magistrate Judge